# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-20141-SHL |
| | ) | |
| MAURICE VAUGHN, | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

Before the Court are Defendant Maurice Vaughn's Motion to Suppress, filed July 18, 2019, (ECF No. 21), the United States' Response thereto, filed August 1, 2019, (ECF No. 25), and the testimony of witnesses and exhibits admitted during a hearing, held on August 8, 2019, (ECF Nos. 28, 29). Mr. Vaughn seeks suppression of the evidence seized from his car, contending that it was obtained during an illegal search. (ECF No. 21.) For the following reasons, the Court **GRANTS** the Motion.

## BACKGROUND[1]

Mr. Vaughn does not challenge that, on June 22, 2018, Memphis Police Department ("MPD") Organized Crime Unit Detective Brandon Baker observed him driving with a cracked windshield in violation of Tennessee law, justifying the traffic stop that preceded the vehicle search giving rise to this dispute. (See ECF No. 21 at PageID 33–34; ECF No. 25 at PageID 43.) Rather, he challenges the constitutionality of the search that ensued. Specifically, he contends that MPD officers failed to follow a standardized policy governing inventory searches of a vehicle prior to towing the vehicle.

MPD's Tow-In Policy provides, in pertinent part, that:

---

[1] This factual background is summarized from the Parties' filings and testimony heard and exhibits admitted during the August 8, 2019, hearing. (ECF Nos. 21, 25, 28, 29.)

> Unless a vehicle is needed for evidentiary purposes, vehicles should be inventoried whenever they are towed, regardless whether a private wrecker or the police wrecker does the towing. . . . An inventory should include the area of the vehicle to which an officer has access. . . . All closed containers found within an inventoried vehicle should be examined and its contents listed unless locked and no key is available. This is permissible as long as such an examination can be conducted without a forcible entry that would result in property damage.

(Ex. 1 at 10, ECF No. 29.) As for whether to tow a vehicle when an officer arrests the driver, and the vehicle itself is not needed as evidence, the MPD Tow-In Policy provides that:

> the officer is required to allow the defendant to leave the vehicle at the scene of arrest if the defendant so desires and it is legally parked. The defendant cannot, however, park a vehicle on private property without the consent of the property owner/management. The defendant may authorize a third party at the scene who is not under arrest to legally park the vehicle. The defendant will not be allowed to move his vehicle once he has been arrested. Under no circumstances will an officer on the scene drive the vehicle with or without the owner's consent. <u>These options must be explained to the defendant before the decision to tow is made</u>.

(Ex. 1 at 4, ECF No. 29 (emphasis added).) Furthermore, "[i]f a vehicle cannot legally be parked, left on private property with permission, or released to a third party, then the vehicle should be towed to the City Impound Lot. <u>A supervisor must be contacted prior to requesting a wrecker</u>." (<u>Id.</u> (emphasis in original).)

After Detective Baker initiated an investigatory stop of Mr. Vaughn's vehicle, Mr. Vaughn pulled into the driveway at 3722 Suzanne Drive, Memphis, TN 38127, allegedly belonging to one of his relatives, and told Detective Baker that he was on his way to pick up a co-worker. (ECF No. 21 at PageID 33; ECF No. 25 at PageID 42.)[2] Mr. Vaughn did not have a valid driver's license, and Detective Baker took him into custody and placed him in his patrol car. (ECF No 21 at PageID 33; ECF No. 25 at PageID 42–43.) Without advising Mr. Vaughn of the option to leave the vehicle legally parked on private property with the owner's permission,

---

[2] According to the testimony of Ayanna Vaughn, Mr. Vaughn's sister, the home belonged to her boyfriend, who worked with Mr. Vaughn. (ECF No. 28.)

knocking on the door of the home to ask whether Mr. Vaughn had the property owner's permission to leave it there or contacting his supervisor, Detective Baker made a decision to tow Mr. Vaughn's vehicle and called his partner, Detective "C." Murphy, for back-up. (ECF No. 28.)[3] He also called for a tow of the vehicle. (ECF No. 28.)

When Detective Murphy arrived on the scene, he also did not advise Mr. Vaughn of the option to leave the vehicle legally parked somewhere or knock on the door to see whether anyone could authorize Mr. Vaughn leaving the car there. (ECF No. 28.) Instead, he conducted an inventory search of the vehicle because, according to his testimony, he was just there to provide back-up to Detective Baker, who had already taken Mr. Vaughn into custody and made a decision to tow the vehicle. (ECF No. 21 at PageID 33; ECF No. 25 at PageID 43; ECF No. 28.) During the search, Detective Murphy discovered a Taurus 9mm caliber pistol inside a gym bag in the back seat of the vehicle. (ECF No. 21 at PageID 33; ECF No. 25 at PageID 43.)

According to an internal memorandum of the Shelby County District Attorney, Detective Murphy later told the state prosecutor that he intended to leave the vehicle legally parked at 3722 Suzanne Drive, "but since Det. Baker wanted to tow, he was asked to search car." (Ex. 7, ECF No. 29.) On cross-examination, at the August 8, 2019, hearing, Detective Murphy stated that he

---

[3] A photograph of Mr. Vaughn's vehicle at the scene, taken by Detective Baker after he arrested Mr. Vaughn, called for a tow and Detective Murphy searched the car, shows a person sitting on the porch at the residence and a child playing in the yard. (Ex. 2, ECF No. 29.) On cross-examination, Detective Baker could not recall whether the people in the photograph were present at the time of the initial stop, or when the arrest of Mr. Vaughn or decision to tow were made. (ECF No. 28). Detective Murphy testified that onlookers were not present when he arrived, and appeared only after Mr. Vaughn was arrested. (Id.)

With apologies and due respect to Detective Murphy, the Court has no record of his first name, as counsel for the Government did not ask him specifically to state and spell his first name for the record. (ECF No. 28.) The exhibits admitted into evidence describe him only by his first initial, "C." (See, e.g., Ex. 3 at 007, ECF No. 29.)

3

could not recall speaking with the assistant district attorney who prepared the memorandum. (ECF No. 28.)

A federal grand jury subsequently returned a one-count Indictment charging Mr. Vaughn with knowingly possessing in and affecting interstate commerce a firearm, having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) In the Motion, Mr. Vaughn contends that, although there was reasonable suspicion based on specific, articulable facts to conduct an investigatory stop, there was no basis for the search of the vehicle. He argues that the search cannot be justified based on protecting officer safety or a search incident to arrest, neither of which were argued by the Government. As for a warrantless vehicle search to inventory its contents where the vehicle has been or will be towed, he avers that a standardized policy must be followed when doing an inventory search, and that the officers here did not follow the MPD policy governing search of a vehicle incident to an arrest. (Id. at PageID 37.)

The Government disagrees and counters that MPD officers here did follow standard policy. (ECF No. 25 at PageID 45; see also generally ECF No. 25-1.) According to the Government, Mr. Vaughn told Detective Baker that he was picking up a co-worker on the way to work, never told either detective that 3722 Suzanne Drive belonged to a relative, and that nobody was present to give consent to leave the vehicle parked in the driveway. (ECF No. 25 at PageID 45.) Therefore, the Government contends that Detective Baker's decision to tow was proper under the policy. (Id. at PageID 45.) Moreover, because the decision to tow was proper, the Government also argues that the search was valid because it was conducted according to the standard procedures outlined in the MPD Tow-In Policy. (Id. at PageID 46.)

In the alternative, the Government argues that, under the limits of the exclusionary rule, suppression is not an appropriate remedy where, as here, the officers conducted the warrantless

4

search of the vehicle in good faith compliance with a standard policy, and not for the sole purpose of investigation. (Id. at PageID 46–49.)

## ANALYSIS

It is axiomatic that the Fourth Amendment to the United States Constitution guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). When a defendant challenges the constitutionality of a warrantless search, the Government bears the burden of establishing that an exception to the Fourth Amendment's warrant requirement applies. See United States v. Herndon, 501 F.3d 683, 692 (6th Cir. 2007) (citing United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002)).

One such exception permits "inventory searches of automobiles." Colorado v. Bertine, 479 U.S. 367, 370–71 (1987). "After lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search. Such inventory searches 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998) (quoting Bertine, 479 U.S. at 372). However, to prevent an inventory search from becoming "a ruse for a general rummaging in order to discover incriminating evidence," officers must conduct the inventory search in good faith, "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Florida v. Wells, 495 U.S. 1, 3–4 (1990) (quoting Bertine, 479 U.S. at 375) (internal quotation marks omitted); see also United States v. Hockenberry, 730 F.3d 645, 659 (6th Cir. 2013) ("we must consider

whether . . . 'police acted in bad faith or for the sole purpose of investigation' in conducting an inventory search"). Such standard criteria include "standard police procedures," like departmental polices. See United States v. Jackson, 682 F.3d 448, 455–57 (6th Cir. 2012).

Where no exception to the Fourth Amendment's warrant requirement applies, "the Supreme Court has directed that 'all evidence obtained by an unconstitutional search . . . [is] inadmissible in federal court regardless of its source,'" a judicially created remedy designed to deter constitutional violations in evidence-gathering. United States v. Pearce, 531 F.3d 374, 381 (6th Cir. 2008) (quoting Mapp v. Ohio, 367 U.S. 643, 654 (1961), and citing Weeks v. United States, 232 U.S. 383 (1914)). Like the warrant requirement, however, this "exclusionary rule" is not absolute; it is a "last resort" that applies "only . . . where its deterrence benefits outweigh its substantial social costs." Hudson v. Michigan, 547 U.S. 586, 591 (2006) (citations and internal quotation marks omitted). "The principal cost of the rule is, of course, letting guilty and possibly dangerous defendants go free—something that offends 'basic concepts of the criminal justice system.'" Herring v. United States, 555 U.S. 135, 142 (2009) (quoting United States v. Leon, 468 U.S. 897, 908 (1984)). Therefore, before a court will suppress evidence under the rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable such that deterrence is worth the price paid by the justice system." Id. at 144.

Here, the Court finds both that the search violated Mr. Vaughn's Fourth Amendment rights and that exclusion is an appropriate remedy. As to the constitutional violation, by their own admission, neither detective presented Mr. Vaughn with his options concerning alternatives to towing before making the decision to tow. Moreover, Detective Baker testified that he did not contact a supervisor before deciding to tow Mr. Vaughn's vehicle. Both of these failures are

violations of the MPD Tow-In Policy's mandatory language concerning what officers "must" do before they decide to tow a vehicle.  See supra at 2.  Thus, the decision to tow was improper, and the subsequent search was unconstitutional because Detectives Baker and Murphy failed to follow standardized procedures.  See Wells, 495 U.S. at 3–4 (quoting Bertine, 479 U.S. at 375); see also Hockenberry, 730 F.3d at 659; Jackson, 682 F.3d at 455–57; Lumpkin, 159 F.3d at 987 (quoting Bertine, 479 U.S. at 372).

Having found a constitutional violation, the Court also finds that exclusion is an appropriate remedy here.  Indeed, against the backdrop of these significant procedural failures, the Court is especially troubled by the Shelby County District Attorney's memorandum memorializing a conversation in which Detective Murphy stated that, although he intended to leave the vehicle legally parked, Detective Baker "wanted" to tow it and asked Detective Murphy to perform the search.  That description smacks of the very type of deliberateness that the exclusionary rule is designed to deter, and is in direct conflict with the MPD Tow-In Policy. See Hudson, 547 U.S. at 591; Herring, 555 U.S. at 144; Pearce, 531 F.3d at 381 (quoting Mapp, 367 U.S. at 654, and citing Weeks, 232 U.S. 383).  Therefore, exclusion of all physical and testimonial evidence that was obtained in violation of Mr. Vaughn's rights is an appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion, and all physical and testimonial evidence obtained as a result of the search is suppressed.

**IT IS SO ORDERED,** this 14th day of August, 2019.

> s/ Sheryl H. Lipman
> SHERYL H. LIPMAN
> UNITED STATES DISTRICT JUDGE

7